IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 21-91-1 |
| | : | |
| GABRIEL RIVERA-OTERO | : | |

**ORDER - MEMORANDUM**

**AND NOW**, this 8th day of September 2023, upon consideration of the Government's "Motion *in Limine* to Admit Evidence That is Intrinsic, or Alternatively, Under Federal Rule of Evidence 404(b)" (Docket No. 83) and Defendant Gabriel Rivera-Otero's response thereto, **IT IS HEREBY ORDERED** that the Motion is **GRANTED IN PART AND DENIED IN PART** as follows:

1.   The Motion is **GRANTED** with respect to testimony and transcripts of audio and visual recordings, which the Government may introduce in its case-in-chief during the trial of this matter, regarding the following:

(a) communications which took place between a Confidential Source ("CS") and Defendant in October 2020, up to and including October 22, 2020, through WhatsApp, concerning Defendant supplying the CS with five kilograms of fentanyl;

(b) a meeting between the CS and Defendant on October 22, 2020, in the Home Depot parking lot at 4640 Roosevelt Boulevard, in which Defendant gave the CS a sample of fentanyl and they discussed a future purchase of fentanyl by the CS; and

(c) communications between the CS and Defendant on October 27 and October 28, 2020, over WhatsApp concerning a meeting on October 28, 2020, in which Defendant planned to sell six kilograms of fentanyl to the CS.

2.       The Motion is **DENIED** with respect to testimony and transcripts of audio and visual recordings, which the Government sought to introduce in its case-in-chief, regarding the following:

(a) November 7, 2019 communications between Defendant and the CS over WhatsApp and a meeting in the parking lot of the Home Depot on Castor Avenue in Philadelphia, in which Defendant and the CS discussed trafficking heroin and fentanyl and Defendant agreed to provide the CS with a sample of heroin;

(b) a November 21, 2019 meeting between Defendant and the CS at the Home Depot at 4640 Roosevelt Boulevard, in which Defendant gave the CS a small quantity of heroin and told the CS that he could supply the CS with one kilogram of heroin and 700 grams of fentanyl; and

(c) a January 31, 2020 meeting between Defendant and the CS, in which Defendant sold 120 grams of heroin to the CS at the Pep Boys near Roosevelt Boulevard and Langdon Street in Philadelphia.

## I.     BACKGROUND

Defendant has been charged with two counts of knowingly and intentionally possessing with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, on October 28, 2020, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Counts One and Two).  The Indictment also charges Defendant with one count of managing and controlling a residence located at 3502 North Philip Street in Philadelphia on October 28, 2020, that was used "for the purpose of unlawfully manufacturing, storing and distributing a controlled substance, that is, heroin, a Schedule I controlled substance, and [fentanyl], a Schedule II controlled substance," in violation of 21 U.S.C. § 856(a)(2) (Count

Four). The Government asks that we allow it to introduce the following evidence at trial, in its case-in-chief, subject to an appropriate limiting instruction:

> Testimony and transcripts concerning a confidential informant's meetings and drug exchanges with the defendant, to include illegal transactions involving fentanyl and recorded discussions that occurred within the year leading up to his arrest in this case.

(Gov't Mot. at 1.) The Government argues that this evidence is admissible because it is intrinsic to the charged conduct and that it is also admissible pursuant to Federal Rule of Evidence 404(b).

The Government seeks to introduce the testimony and transcripts to inform the jury about the relationship between Defendant and the CS, as evidence of Defendant's intent to distribute fentanyl, and to show Defendant's knowledge that he sought to transfer the fentanyl in his possession to the CS in exchange for money. The Government alleges the following facts in support of its argument. The Government first learned about the relationship between the CS and Defendant in November 2019, when it received information from the CS that "Jose Luis," a Dominican man living in Guatemala, was trafficking heroin and fentanyl in the United States through Defendant. Jose Luis gave the CS Defendant's phone number so that the CS could communicate with Defendant over the messaging app "WhatsApp." On November 7, 2019, after communicating over WhatsApp, the CS and Defendant met in the parking lot of a Home Depot on Castor Avenue in Philadelphia. Drug Enforcement Administration ("DEA") agents conducted surveillance of the meeting. Defendant and the CS discussed trafficking heroin and fentanyl and Defendant also agreed to provide the CS with a sample of heroin in the future.

On November 21, 2019, DEA agents directed the CS to obtain a sample of heroin from Defendant. Later that day, the CS met with Defendant at the Home Depot on Roosevelt Boulevard in Philadelphia. DEA agents conducted surveillance of the meeting, during which Defendant gave the CS a small quantity of heroin and told the CS that he could supply the CS with one kilogram

of heroin and 700 grams of fentanyl. On January 31, 2020, the CS sold 120 grams of heroin to the CS, during a controlled purchase operation supervised by the DEA in the parking lot of a Pep Boys near Roosevelt Boulevard and Langdon Street in Philadelphia. DEA agents followed Defendant to 3502 North Philip Street after this transaction. DEA agents later recovered a large quantity of fentanyl and drug paraphernalia at 3502 North Philip Street in Philadelphia, which is the basis of Count Two of the Indictment. The DEA's investigation of Defendant subsequently stalled as a result of the COVID-19 pandemic.

In October 2020, at the direction of DEA agents, the CS began to communicate with Defendant again using WhatsApp regarding Defendant supplying the CS with approximately five kilograms of fentanyl. The DEA recorded conversations between the CS and Defendant that used the WhatsApp "voice memo" feature. Defendant and the CS also discussed having another in person meeting so that Defendant could provide the CS with a free sample of fentanyl. Defendant also used WhatsApp to send the CS a picture of what appears to be approximately six kilograms of heroin/fentanyl.

On October 22, 2020, the CS met with Defendant in the parking lot of the Home Depot located at 4640 Roosevelt Boulevard in Philadelphia. The DEA conducted surveillance of this meeting, during which Defendant gave the CS a small sample of fentanyl and the CS discussed making a future purchase of fentanyl from Defendant. There are audio and video recordings of this meeting.

The CS and Defendant also communicated using the WhatsApp voice memo feature on the afternoon of October 27, 2020. They discussed meeting the next day in the Home Depot parking lot at 4640 Roosevelt Boulevard so that Defendant could sell six kilograms of fentanyl to the CS. Defendant and the CS continued to communicate using WhatsApp in the morning and early

afternoon of October 28, 2020, discussing the meeting location, plan, and logistics of how and where Defendant would sell the fentanyl to the CS. During these discussions, Defendant told the CS that he would go to the Walmart located next to the Home Depot and purchase a box of Pampers. He told the CS that he would then transfer the fentanyl to the Pampers box. The CS did not appear for their meeting. Instead, DEA agents conducting surveillance intercepted Defendant.

When DEA agents stopped Defendant in the Home Depot parking lot, Defendant had a Pampers box containing six kilograms of fentanyl. After he was stopped, Defendant gave the DEA agents written consent to search the residence at 3502 North Philip Street. The DEA agents recovered approximately 700 grams of fentanyl and drug paraphernalia used to package drugs for sale from that residence.

## II.     DISCUSSION

### A.     Intrinsic Evidence

The Government argues that, because Defendant's relationship with the CS is germane to its case-in-chief, the evidence of that relationship, including Defendant's giving free samples of heroin and fentanyl to the CS and selling heroin to the CS, is intrinsic to the charges against Defendant. "[C]ourts today exempt intrinsic evidence from application of Rule 404(b)," which governs the admissibility of evidence of any other crime, wrong, or act, "on the theory that there is no 'other' wrongful conduct at issue; the evidence is admissible as part and parcel of the charged offense." United States v. Green, 617 F.3d 233, 245 (3d Cir. 2010) (citations omitted); see Fed. R. Evid. 404(b). The United States Court of Appeals for the Third Circuit "reserve[s] the 'intrinsic' label for two narrow categories of evidence. First, evidence is intrinsic if it 'directly proves' the charged offense." Id. at 248 (citing United States v. Cross, 308 F.3d 308, 320 (3d Cir. 2002); United States v. Gibbs, 190 F.3d 188, 218 (3d Cir. 1999); United States v. Bowie, 232 F.3d 923,

929 (D.C. Cir. 2000)). "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" Id. at 249 (quoting Bowie, 232 F.3d at 929). The Government argues that the evidence of the communications between the CS and Defendant is intrinsic because it explains why Defendant went to the Home Depot parking lot with six kilograms of fentanyl.

Defendant opposes the Motion with respect to the communications and meetings between the CS and Defendant that occurred in November 2019 through January 2020. Defendant argues that this evidence is extrinsic to the charged conduct because it would not directly prove the offenses charged in the Indictment. Specifically, he argues that the communications and meetings between the CS and Defendant that occurred from November 2019 through January 2020 are temporally isolated from the charged conduct and also involve discussions about the exchange of heroin, and Defendant is not charged with the possession or distribution of heroin. We agree, and we find that the evidence of Defendant's communications and meetings with the CS from November 2019 through January 2020 is not intrinsic to the charged offenses. However, we conclude that the evidence of the communications and meeting between Defendant and the CS in October 2020, in which they discussed both Defendant's provision of a free sample of fentanyl to the CS on October 22, 2020, and their planning for the transfer of six kilograms of fentanyl from Defendant to the CS on October 28, 2020, is intrinsic to the offenses charged in Counts One and Two of the Indictment. Accordingly, we grant the Motion with respect to testimony and transcripts of audio and visual recordings with respect to communications and meetings between Defendant and the CS in October 2020 as set forth above.

B.     Rule 404(b)

The Government also argues that, if the evidence of Defendant's relationship with the CS from November 2019 through January 2020 is deemed to be extrinsic, that evidence is admissible under Federal Rule of Evidence 404(b).  Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Rule 404(b)(2) provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "Rule 404(b) is a rule of inclusion rather than exclusion." United States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003) (citing United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994)).  The Third Circuit has explained that "[w]e favor the admission of evidence of other criminal conduct if such evidence is 'relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime.'"  Id. (quoting United States v. Long, 574 F.2d 761, 765 (3d Cir. 1978)).  In Huddleston v. United States, 485 U.S. 681 (1988), the Supreme Court announced a four-part test for the admission of Rule 404(b) evidence:  "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted."  Id. (citing Huddleston, 485 U.S. at 691-92; United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002)).

The Government argues that the evidence regarding communications and meetings between Defendant and the CS from November 2019 through January 2020 is necessary to show the relationship between Defendant and the CS and to show how that relationship was built through criminal activity.  The Government also contends that this evidence will show that the CS was in

regular contact with Defendant up until his arrest and will establish the reason Defendant possessed a Pampers box containing six kilograms of fentanyl in the Home Depot parking lot on October 28, 2020. The Government relies on United States v. Butch, 256 F.3d 171 (3d Cir. 2001), in which the Third Circuit affirmed a district court decision allowing a witness in a theft case to testify about his and the defendant's participation in a prior theft because that testimony was "significantly probative of the formation of [the] criminal relationship" between the witness and the defendant. Id. at 176. The Third Circuit noted that "[t]his Court has held that 'testimony of . . . a co-conspirator . . . could be considered relevant to provide necessary background information, to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirator's role in the scheme.'" Id. (all alterations but the first in original) (quoting United States v. Simmons, 679 F.2d 1042, 1050 (3d Cir. 1982)). The Government further relies on Simmons, 679 F.2d 1042, in which the Third Circuit found that testimony of a co-conspirator about prior crimes by the defendants "could be considered as relevant to provide necessary background information, to show an ongoing relationship between [the witness and the defendant], and to help the jury understand [the witness's] role in the scheme." Id. at 1050 (citation omitted); see also Green, 617 F.3d at 247 (stating that "allowing the jury to understand the circumstances surrounding the charged crime—completing the story—is a proper, non-propensity purpose under Rule 404(b)" (citations omitted)).

   We find, however, that the evidence of communications and meetings between Defendant and the CS from November 2019 through January 2020 would not show that the CS was in regular contact with Defendant until his arrest and would not establish the reason Defendant possessed a Pampers box containing fentanyl in the Home Depot parking lot on October 28, 2020. We therefore conclude that this evidence is not admissible under Rule 404(b)(2) to prove "motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Accordingly, we deny the Motion in Limine with respect to the testimony and transcripts regarding communications and meetings between Defendant and the CS from November 2019 through January 2020.

### III. CONCLUSION

For the reasons stated above, we grant the Motion in Limine as to testimony and transcripts regarding communications and meetings between Defendant and the CS in October 2020. We deny the Motion with respect to testimony and transcripts regarding communications and meetings between Defendant and the CS from November 2019 through January 2020.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.